UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROY J. BOLUS,

       Petitioner,

 vs.              9:01-CV-1189

L. A. PORTUONDO,

       Respondent.
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

   The instant petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report and Recommendation. See 28 U.S.C. § 636(b); Local Rule 72.4. The Report and Recommendation dated April 12, 2007 recommended that the Petition be denied and the action dismissed. Dkt. # 67. Petitioner, through counsel, filed objections to the Report and Recommendation. Dkt. # 69.

   When objections to a magistrate judge's Report and Recommendation are lodged, the Court reviews the record *de novo*. See 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The [Court] may also receive further evidence or recommit the matter to the magistrate [judge] with instructions." Id.

   Having review the record *de novo* and having considered the issues raised in the

1

petitioner's lengthy objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Lowe for the reasons stated in the April 12, 2007 Report and Recommendation. Only one issue bears discussion.

Petitioner claims that he was subjected to an unconstitutional custodial interrogation by an unknown officer between the time he was transported to the police station and the time he discussed and admitted his involvement in the crimes of conviction at the police station. In addressing this claim, Magistrate Judge Lowe wrote:

> Petitioner asserts that "[d]uring the trial, it was established that Roy Bolus was questioned three times by three different officers" (Dkt. No. 53 at 11), and that he was advised of his "Miranda" rights only prior to the "third" interrogation. This process of "question first" and then provide "Miranda" warnings was rejected by the Supreme Court, Petitioner argues, in *Missouri v. Seibert*, 542 U.S. 600 (2004).
>
> The Appellate Division's decision addresses police questioning of Petitioner on **two** occasions, not three:
>
>> It appears from the testimony at the suppression hearing that defendant was arrested in Ulster County at approximately 11:00 A.M. on March 9, 1988. He was turned over to State Trooper Anthony Barrera for transport to State Police headquarters in Albany County. When Barrera got into the troop car, he asked defendant his name and then inquired, without advising defendant of his *Miranda* rights, what happened, to which defendant replied "I guess I hung out with the wrong crowd". There was no further conversation between Barrera and defendant during the one-hour drive to State Police headquarters. It further appears that defendant slept during most of the trip. When Barrera and defendant arrived at State Police headquarters, defendant was met by [Albany Police Detective] Keegan who advised him of his *Miranda* rights and asked him if he was willing to give a statement. Defendant acknowledged his understanding of his rights and agreed to cooperate and give a statement.
>
> *People v. Bolus*, 185 A.D.2d 1007, 1008 (3d Dep't 1992).

> The alleged third questioning by an "unknown officer" is described in graphic detail in Petitioner's affidavit dated November 30, 2004, (some sixteen years after it allegedly took place), submitted as an attachment to his "Corrected Traverse" in this proceeding ("the unknown officer questioning"). Dkt. No. 56, Attach. However, at the County Court suppression hearing, Petitioner's trial attorney addressed only two questionings, by State Trooper Barrera ("the Barrera questioning") and by Albany Police Detective Keegan ("the Keegan questioning"). Suppression Hr'g at 473-85. He made no mention whatsoever of the unknown officer questioning, nor did the District Attorney (Suppression Hr'g ("SH") at 495-98), nor did the Court in its Decision (SH at 516-17).
>
> Similarly on direct appeal to the Appellate Division, in "Appellant's Brief & Appendix," at Point V, Petitioner's appellate attorney addressed only the Barrera questioning and the Keegan questioning. However, Petitioner himself submitted a *pro se* "Supplementary Brief for the Appellant" to the Appellate Division, and here he did reference an unknown officer questioning, at pages nine through eleven. This reference, however, was brief, and without any description of what occurred during the questioning. It stands in stark contrast to the graphic description provided by Petitioner in his affidavit of November 30, 2004.
>
> Following the Appellate Division's affirmance, Petitioner's appellate counsel sought review from the Court of Appeals, based in part upon the *Miranda* claim, but again he made no reference to the unknown officer questioning. Letter from Colin J. Kenneally, Esq. to the Court of Appeals (September 21, 1992). Petitioner submitted a *pro se* letter to the Court of Appeals, enclosing his *pro se* brief, but in the letter he did not address his *Miranda* claim at all nor did he mention in any way the unknown officer questioning. Letter from Roy J. Bolus to the Court of Appeals (September 28, 1992).

Rep. Rec. pp. 13-16 (footnotes omitted, emphasis in original).

Magistrate Judge Lowe opined that Petitioner's due process claim arising from the purported interim interrogation was procedurally barred because it had not been presented to the State court. See Rep. Rec. pp. 13- 18. Magistrate Judge Lowe also correctly noted:

> Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. *See St. Helen v. Senkowski*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an

3

> unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent'")(quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).
>
> To establish "cause," a petitioner must show that some objective external factor impeded his ability to either comply with the relevant procedural rule or fully exhaust his federal claims. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, Civ. No. 00-7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray*, 477 U.S. at 488 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984) and quoting *Brown v. Allen,* 344 U.S. 443, 486 (1953)). *See also Bossett*, 41 F.3d at 829 (citing *Murray*, 477 U.S. at 488); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992); *Lovacco v. Stinson*, Civ. No. 97- 5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*, 477 U.S. at 488).
>
> \* \* \*
>
> "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.*

Rep. Rec. pp. 18-20.

Magistrate Judge Lowe concluded:

Here Petitioner has not even asserted, in either his Petition or Corrected Traverse, a claim of cause for his failure to exhaust this claim. As a result, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental miscarriage of justice, federal *habeas* relief is unavailable as to procedurally barred claims unless **both** cause and prejudice are established. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *McLeod v. Moscicki*, Civ. No. 02-9335, 2003 WL 22427757, at *8 (S.D.N.Y. Oct. 22, 2003) (citing *Murray*, 477 U.S. at 494); *You v. Bennett*, Civ. No. 00-7514, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003) (citing *Coleman*, 501 U.S. at 750); *Ayuso v. Artuz*, 2001 WL 246437, at *9 (S.D.N.Y. Mar. 7, 2001); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).

> Finally, this Court finds no basis to conclude that the denial of Petitioner's procedurally barred claim would result in a fundamental miscarriage of justice, which exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. . . . In this proceeding Petitioner has not claimed actual innocence (*Bousley*, 523U.S. at 623), and there is no basis in the record for concluding that it is probable "that no reasonable juror would have convicted him."

Id. pp. 19-20 (emphasis in original).

Because the procedural bar to this claim was raised *sua sponte*, Petitioner was entitled to "notice of the proposed disposition of the claim on procedural grounds, as well as an opportunity to be heard on this issue." Id. p. 21 (citing, *inter alia*, *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000)).  Accordingly, Magistrate Judge Lowe advised in the Report and Recommendation that if Petitioner "believes that the claim should not be deemed . . . procedurally barred, he must raise this contention in his timely-filed objections to this Report and Recommendation." *Id.* (citing *Acosta*, 221 F.3d at 121).

Petitioner has challenged the procedural bar recommendation in his objections, but his arguments are without merit.  As to a claim of cause for failing to raise the issue in State court, Petitioner merely re-asserts the contentions considered - and rejected - by Magistrate Judge Lowe.  That is, that the claim was raised, although with no particularity, in the *pro se* "Supplementary Brief for the Appellant" to the Appellate Division.  He fails to explain why the purported interim interrogation (which he recounts in such vivid and astounding detail in his November 30, 2004 affidavit, *see* Rep. Rec. pp. 14-15, n. 9) was never presented with any detail to the State court such to allow the State court to rule upon the merits of the claim.[1]  Certainly, the facts behind the purported interim

---

[1] In the *pro se* "Supplementary Brief for the Appellant" to the Appellate Division, Petitioner contends
(continued...)

5

interrogation were known to Petitioner at the time of his trial, and he challenged the admissibility of his statements to Detective Keegan in a suppression hearing.  His failure to offer any reason why he did not raise the startling circumstances of the purported interim interrogation at trial calls into doubt the veracity of his statement and fails to establish cause for failing to raise the issue earlier.

---

[1](...continued)
that after he was brought into the police station, various officers roamed about in the interrogation room, and one officer commenced questioning before Detective Keegan arrived. He provides no details as to the nature of the questions purportedly presented by this unknown officer, whether Petitioner gave any response, or whether the unknown officer did or said anything that could have been construed as threatening or improper. By contrast, in his November 30, 2004 affidavit Petitioner contends that when he told the unknown officer that he was not involved in the murders,

> the officer walked over to me and said that he could and would hurt me in ways that my lawyer and the judge would never know about or be able to identify. So it would be in my best interest to cooperate. Again, I said that I wasn't involved in the incident.
>
> The unknown officer grabbed me by my jacket, stood me up and punched me in the stomach. When I bent over, the officer stretched his arm over and down my back, grabbed my wrists (Which [sic] were still secured in handcuffs) and pulled my arms upward. I was forced to lean my face into his torso to prevent from falling forward. I screamed and begged him to stop. I kept telling him over and over that I didn't know anything, but he kept pulling my arms upward. Excruciating pain shot back and forth across my shoulders and my upper back area.
>
> The unknown officer let me go and I fell to my knees, crying. The officer punched me in the back of my head and told me to "get the fuck up". As I tried to stand up, the officer said since I was playing hard ball with him, he would connect me to the crime, even if I wasn't involved because somebody had to pay and I was the best candidate. The officer asked me if I wanted to see how easy it was to get me involved and send me up the river for the rest of my life. I told him no, I didn't want that. He said well, I should of told him who shot who, and then left the room.
>
> The officer left the interrogation room and returned with a clear small bag of jewelry and currency. He spread the items on a desk in the interrogation room. He told me that now I was connected to the crime because the items were those that were stolen from the scene of the crime. That the items belonged to me now. I remained silent in fear of another beating.
>
> The unknown officer stated that if I didn't cooperate with the next officer who entered the room, he would come back and they would both beat me into a coma, and then pin more evidence against me so that my charges would be more serious. Another officer, who I later learned was Detective Keegan, entered the room, as the unknown officer stood over the desk handling the stolen items on the desk and writing something on paper.

Dkt. No. 56, Attach.

Petitioner's argument that he was limited to the trial court record and therefore could not have raised the argument with particularity on appeal does not explain why he did not present the claim as one of ineffective assistance of trial or appellate counsel in a post-conviction motion pursuant to CPL Section 440.10. *Ocasio v. Walker,* 2004 WL 1516789, at * 6 (S.D.N.Y. July 6, 2004)("In most cases, the proper vehicle for a claim of ineffective assistance of trial counsel is a post-conviction motion made pursuant to CPL Section 440.10.")(citing *People v. Love,* 57 N.Y.2d 998, 1000, 457 N.Y.S.2d 238, 443 N.E.2d 486 (1982)).   It must have been abundantly clear to Petitioner after trial and after the Appellate Division's decision that the issue surrounding the purported interim interrogation had not been fully addressed by trial and appellate counsel.  Petitioner could have developed the record in this regard on the post trial motion, yet failed to do so. *See People v. Love,* 57 N.Y.2d at  1000 ("[W]e cannot conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that might have been developed had an appropriate after-judgment motion been made pursuant to CPL 440.10.")(interior quotation marks and citations omitted).  The Court concludes that Petitioner's failure to present the claim to the State court was without cause.

Petitioner's argument of actual innocence is equally unavailing.  Petitioner contends that he has always asserted his actual innocence and argues that if his admission to Albany Police Detective Keegan had been suppressed, he would not have been convicted.  This argument fails to take into account that an eye-witness, Eric Smith, testified that on the date of the murders, Petitioner, carrying a gun, was one of four men

7

who forced their way into the house where the murders occurred. In addition, Petitioner was arrested in a vehicle with his three co-defendants shortly after the murders occurred. While Petitioner may feel that the eye-witness's account is not credible, a jury could well have determined otherwise. Thus, even assuming *arguendo* that Petitioner's statement to police had been suppressed, there still existed evidence upon which the jury could have convicted him. Simply stated, Petitioner fails to establish that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. The Court agrees with Magistrate Judge Lowe's conclusion that the claim arising from the purported interim interrogation by an unknown police officer is procedurally barred.

It is therefore

**ORDERED** that the Petition for a writ of habeas corpus is **DENIED,** and the action is **DISMISSED.**

**IT IS SO ORDERED.**

DATED: September 26, 2007

Thomas J. McAvoy
Senior, U.S. District Judge